**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| THERESA WILLER-GRINKEWICZ, on behalf of herself and all others similarly situated, | : : : : : : : : : : : : : : : : : : : : | CLASS ACTION COMPLAINT |
| Plaintiff, | | CIVIL ACTION NO. 2:26-cv-2485 |
| v. | | |
| A BOB'S TOWING, INC., dba BOB'S SPONGES and MIKINA HARRISON, | | |
| Defendants. | | |

**COMPLAINT—CLASS ACTION**

Plaintiff Theresa Willer-Grinkewicz brings this action pursuant to RICO, 18 U.S.C. § 1964(c), on behalf of herself and all others similarly situated. Plaintiff seeks to recover treble the damages she and other members of the Class incurred as a result of Defendants' violations of 18 U.S.C. §§1962(c) and (d) as well as their violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and common law. In support hereof, Plaintiff avers:

**NATURE OF ACTION**

1.     For years, Defendants have been running an illegal ransom racket in private parking lots within Philadelphia.

2.     Defendants use "barnacles," large yellow devices which adhere to vehicle windshields and make it impossible to safely operate the vehicle to extort community members

for cash. Specifically, they incapacitate their victims' vehicles with barnacles and then demand a

hundred dollars, or more, from victims for the removal of the "barnacle."

3.      Victims routinely pay up because the alternative is being stranded without use of

their vehicles.

4.      Figure 1 depicts one of the "barnacles" used by Defendants to incapacitate

vehicles.



**FIGURE 1 - BARNACLE ON WINDSHIELD**

5.      Victims have no due process of law before being deprived of their vehicles. They

have no notice or opportunity to be heard. There is no "hearing." Victims simply return to their

vehicle to find it disabled by a barnacle with instructions about how to pay for its removal or,

alternatively, find the barnacle on their vehicle and then are accosted by Defendants' flunkies

who often offer "discounts" for cash payments.

CLASS ACTION COMPLAINT

6. Defendants' racket is nothing short of illegal extortion and, indeed, an agent of Bob's Sponges—Defendant Harrison's son Taylor Harrison—has already been arrested and charged with theft by extortion and criminal mischief for his role in Defendants' predatory scheme.

7. Defendant A Bob's Towing, Inc., dba Bob's Sponges ("Bob's Sponges") is a towing company operating within the City of Philadelphia and subject to the Philadelphia Code.

8. Section 9-605(11)(d) of The Philadelphia Code dictates that "[n]o vehicle shall be hooked, towed, or handled in any manner under this subsection **unless the vehicle has been ticketed, by the police or other law enforcement authority**, for a violation of subsection 12-913(1)(b)(.1) (relating to parking in front of a public or private driveway), or subsection 12-913(2) (relating to parking or leaving unattended a vehicle on private property without consent of owner), at the location from which the vehicle is to be towed, except as provided in subsection 9-605(11)(d)(.1), except that in a licensed parking lot, a vehicle may be moved to another location in the parking lot prior to ticketing." (Emphasis added.)

9. Defendant Bob's Sponges brazenly violates section 9-605(11)(d) of the Philadelphia Code by handling vehicles parked on private property that have not been ticketed by the police or other law enforcement authority for *any* parking violations. Specifically, Defendants regularly use barnacles to incapacitate vehicles that have not been ticketed by the Philadelphia Parking Authority ("PPA") or any law enforcement authority for any parking violation. This use of barnacles constitutes "handl[ing] the vehicle" and, as such, is prohibited by the Philadelphia Code "unless the vehicle has been ticketed, by the police or other law enforcement authority."

CLASS ACTION COMPLAINT

10.     Bob's Sponges extortionary barnacle racket is pursued in collaboration with third parties across the City of Philadelphia who engage Defendants to victimize and extort those parking in lots owned by the third parties.

11.     Plaintiff Theresa Willer-Grinkewicz is a victim of Defendants' scheme who paid Defendants $100.00 to regain control of her vehicle after Defendants illegally disabled it with a barnacle.

12.     Plaintiff brings this class action to obtain injunctive relief preventing Defendants from continuing their extortionary barnacle scheme. She also seeks damages to compensate her and all other similarly situated victims for the monies they have lost to Defendants' illegal racket as well as punitive damages.

## PARTIES

13.     Plaintiff Theresa Willer-Grinkewicz is a resident of the County of Philadelphia and a citizen of the Commonwealth of Pennsylvania.

14.     Defendant A Bob's Towing, Inc. dba Bob's Sponges ("Bob's Sponges") is a Pennsylvania corporation with its principal place of business at 2200 Orthodox Street, Philadelphia, PA 19137.

15.     Defendant Mikina Harrison is the President of Defendant Bob's Sponges On information and belief, she is a resident of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964. This Court has supplemental subject matter jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367(a).

4

CLASS ACTION COMPLAINT

17.    Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district and because Defendants reside, are found, have agents, or transact their affairs in this judicial district.

## FACTUAL ALLEGATIONS

18.    On October 25, 2025, Plaintiff pulled into the CVS parking lot at the northwest corner of the intersection of Spring Garden Street and North 4th Street in the Northern Liberties neighborhood of Philadelphia.

19.    Plaintiff needed to pick her husband's prescription up from the CVS pharmacy, but the CVS parking lot was full. Plaintiff then pulled into a strip mall parking lot across the street, on the northeast corner of the intersection of Spring Garden Street and North 4th Street. She parked.

20.    Plaintiff ran into CVS to pick up her husband's medicine and promptly returned to her vehicle.

21.    When Plaintiff returned to her vehicle, she discovered that there was a barnacle apparatus attached to the driver side of her windshield making the vehicle impossible to drive.

22.    A man approached Plaintiff and told her that the only way she could regain use of her vehicle was to give him $100.00, in exchange for which he would remove the barnacle from Plaintiff's windshield.

23.    The man was not wearing a uniform and did not have any badge or identification on his clothes; Plaintiff asked him for identification, but he refused to provide any.

CLASS ACTION COMPLAINT

24.     The man told Plaintiff that because she had gone to CVS, she was parked "illegally." He told Plaintiff "This is how it works: You give me a hundred dollars and I remove the apparatus off your car." He told her she was "very lucky" because the price used to be $150.00 but was recently lowered.

25.     Plaintiff was alone and there was no one around. She needed her vehicle to leave and felt she had no option other than paying. She gave the man $100.00 and asked for a receipt.

26.     The man said he would only email Ms. Willer-Grinkewicz a receipt.

27.     After Plaintiff had paid, the man said he needed Plaintiff's phone to remove the barnacle.

28.     Ms. Willer-Grinkewicz told the man she did not have a phone with her. The man began aggressively berating Plaintiff and then removed the barnacle without using a phone.

29.     Ms. Willer-Grinkewicz left the parking lot and drove home.

30.     When Ms. Willer-Grinkewicz returned home, she checked her email and saw a message with the subject "Boot" from a strange, unofficial looking e-mail address: bigfkdoblock@gmail.com. The body of the message said "$100 receipt" and nothing more.

31.     Ms. Willer-Grinkewicz responded to the email "bigfkdoblock@gmail.com" asking for information about the company the sender worked for, but she never received a response.

**DEFENDANT HARRISON'S CONTROL OVER THE ILLEGAL BARNACLE SCHEME**

32.     On information and belief, Defendant Harrison is the mastermind of the illegal barnacle scheme and is personally responsible for overseeing its implementation.

CLASS ACTION COMPLAINT

33.    One way in which Defendant Harrison directs and participates in the execution of Bob's Sponges' barnacle racket is by hiring the low-level "soldiers" who are on the front lines of converting victims' vehicles and intimidating victims to demand payment.

34.    On June 23, 2025, Defendant Harrison made a Facebook post stating she was looking for "enforcer[s]." She referred to victims whose vehicles had been illegally converted by Defendants and who were upset about having their property rights trampled as "Assholes," stating the "enforcer" position was "ideal for . . . someone that has a great personality to interact with Assholes." *See* Figure 2.



**FIGURE 2 - FACEBOOK POST BY MIKINA HARRISON**

CLASS ACTION COMPLAINT

35.    On January 15, 2025, Defendant Harrison sent an email to Philadelphia government officials in which she wrote "I have been doing barnacles inside of Philadelphia for the last two years. I am a private property parking lot consultant for at least 100 property managers." Defendant Harrison's use of the word "I" in her statement "I have been doing barnacles" reflects her control and authority over the conduct of Defendant Bob's Sponges.

36.    On information and belief, Defendant Harrison has also personally fielded numerous phone calls from victims of the barnacle scam; one victim who spoke with Defendant Harrison made a social media post recounting the interaction. *See* Figure 3.



Janice Meagher Viskovich doesn't recommend A Bobs Towing.
March 20, 2024 ·

Parking Zone 3190 Philadelphia PA
PLEASE BE WARNED THAT THE OWNER MIKINA HARRISON WILL SUCK THAT BARNACLE TO YOUR VEHICLE AS SOON AS YOUR PAID PARKING EXPIRES. AS SHE STATED TO ME ON THE PHONE THE FIRST DAY I ARRIVED IN PHILLY FROM CANADA FOR A TWO DAY VISIT, "JUST KEEP PAYING THE APP LOL AND YOU'LL HAVE NO PROBLEMS'.

The morning we left there sat the barnacle at 7 am. I paid the 32.00 in parking, but to remove needed to pay 450.00 US!!!! MIKINA arrived on the scene to give us the good news that she was given the ok to change the amount to 150.00 US!!! What a sickening scam to encounter on a quick vacation, just sickening and an awful scam to unsuspecting tourists who have no alternative but to pay.

Simply stated, we paid close to $300.00 for parking in the City of Philadelphia!?!

2                                                              4 comments

Like              Comment              Share

**FIGURE 3 - FACEBOOK POST DESCRIBING INTERACTION WITH DEFENDANT HARRISON**

37.    Ms. Harrison is personally liable to the Class for the tortious and illegal conduct alleged herein because of her role in masterminding, directing, overseeing, and controlling Bob's Sponges' illegal barnacle scheme.

38.    Ms. Harrison is personally liable to the Class for the tortious and illegal conduct alleged herein because (1) she and Defendant Bob's Sponges together acted with the common

purpose of committing the illegal acts alleged herein, (2) there were overt acts done in furtherance of that common purpose, and (3) Plaintiff and the Class suffered actual legal damage as a result of the conspiracy.

## **DEFENDANTS' MALICIOUS, RECKLESS, AND WANTON CONDUCT**

39.     At all relevant times, Defendants knew that their use of barnacles against parkers in Philadelphia was not authorized by the Philadelphia Code.

40.     Defendant Harrison aggressively lobbied the Philadelphia City Council to adopt new regulations legalizing Defendants' barnacle scheme, going so far as to submit a proposed ordinance that would legalize Defendants' scheme.

41.     As of the date of this filing, the Philadelphia City Council has declined to adopt the ordinance proposed by Defendant Harrison and, on information and belief, is specifically considering a rule change that would make it even clearer than it already is that Defendants' barnacle scheme is illegal under the Philadelphia Code.

42.     Defendants—who have actively endeavored, and failed, to get the Philadelphia City Council to legalize their racket—knew at all times that their barnacle scheme was not authorized by the Philadelphia Code. In fact, Defendants were, on information and belief, repeatedly informed by Philadelphia law enforcement that their conduct was illegal. Nevertheless, they persisted in victimizing Philadelphians and others parking in the city with their barnacle racket.

43.     The Philadelphia Code requires that a vehicle be ticketed by the PPA or other law enforcement before it may be "handl[ed]" by a tow company like Bob's Sponges, but that did not stop Defendants from raking in cash with their extortionary scheme, which necessarily required

"handling" victims' vehicles by applying a barnacle to them. This brazen indifference to victims' property rights reflects Defendants' outrageous, malicious, and oppressive attitude towards class members.

44.  Defendants' malicious disregard is further evidenced by Defendant Harrison's characterization of victims as "Assholes" in a Facebook post seeking to hire "enforcers." This characterization denigrates class members who may feel frustration at having their chattels converted by Defendants and, in doing so, reveals Defendants' malicious and oppressive mindset.

45.  Defendants' conduct is outrageous and malicious and reflects a reckless indifference to the property rights of those whose vehicles Defendants hold ransom with barnacles.

**CLASS ALLEGATIONS**

46.  Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of similarly situated individuals. They seek class certification under Rule 23(b)(2) and (b)(3).

47.  The class is defined as: all persons who between six years prior to the date of filing and the present paid Bob's Sponges to remove a barnacle placed on a vehicle parked within the City of Philadelphia that had not first been ticketed by the Philadelphia Parking Authority or other law enforcement and who have not received a full refund for the monies paid to Bob's Sponges for barnacle removal.

48.    The RICO Subclass is defined as: Class members who paid Bob's Sponges for barnacle removal in the period between (a) four years prior to the date of filing and (b) the present.

49.    The Common Law Claims Subclass is defined as: Class members who paid Bob's Sponges for barnacle removal in the period between (a) two years prior to the date of filing and (b) the present.

50.    The class is so numerous that joinder of all members is impracticable. As alleged above, the barnacle scheme has been ongoing for several years. Defendant Harrison has boasted in a video titled "Barnacle Success Stories: Bob's Sponges" that "each barnacle to me represents a tow truck. So I had twelve tow trucks where I'm paying significantly less per tow truck to operate." The duration of the scheme and the number of barnacles used by Defendants suggest numerosity is easily satisfied here.

51.    There are questions of law and fact common to each class member including, but not limited to the following:

    a.    Whether Defendants' application of the barnacle to victims' windshields constitutes the exercise of dominion or control over victims' property under Pennsylvania law;

    b.    Whether the application of a barnacle to a vehicle constitutes "handling" that vehicle within the meaning of Philadelphia Code section 9-605;

    c.    Whether the Class is entitled to punitive damages from Defendants;

    d.    Whether the class is entitled to treble damages under the Unfair Trade Practices and Consumer Protection Law;

e.   Whether Defendants' barnacle scheme caused class members to suffer injury; and

f.   The proper measure of damages for any injury suffered by Class members as a result of Defendants' barnacle scheme.

52.   The common questions set forth above apply to each victim of the barnacle scheme and predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the claims with respect to considerations of consistency, economy, efficiency, fairness, and equity.

53.   Plaintiff's claims are typical of the claims of the Class in that, among other things, Plaintiffs and members of the Class were all injured by the same unlawful conduct, which resulted in similar forms of monetary loss and similar injuries to their property rights.

54.   Plaintiff will fairly and adequately represent the class and does not have any conflicts with the Class.

55.   Counsel for Plaintiff is experienced in handling class actions and will adequately and zealously represent the interests of the class.

56.   Counsel's law firm, Kneupper & Covey, PC, is experienced at handling class actions and has the resources necessary to ensure this case is vigorously prosecuted.

57.   A class action regarding the issues in this case does not create any problems of manageability.

58.   Upon information and belief, no similar litigation concerning the claims herein has been filed against Defendants by any class member.

59.   A class action is a particularly appropriate means of resolving this controversy,

because the harms class members have suffered are generally small and unlikely to be sufficient to permit the hiring of an attorney to sue Defendants. Further, some class members may not even be aware of their rights under Federal and Pennsylvania law and without attorneys representing them, those who do know their rights are unequipped to enforce them.

60.     A class action is appropriate in this forum, as the transactions and occurrences each occurred in Philadelphia, which is located in this judicial district.

61.     This matter is appropriate for equitable relief on a class-wide basis for the reasons stated above, and because Defendants have acted and refused to act on grounds generally applicable to the class.

## FIRST CAUSE OF ACTION

**Conduct or Participation in the Conduct of the Affairs of an Enterprise through a Pattern of Racketeering Activity, 18 U.S.C. § 1962(c)**

*Against Defendant Bob's Sponges*

62.     At all relevant times, Plaintiff has constituted a person within the meaning of 18 U.S.C. § 1961(3) and § 1964(c) because she has been capable of holding a legal or beneficial interest in property.

63.     At all relevant times, Defendants have each constituted persons within the meaning of 18 U.S.C. § 1961(3) because they have all been capable of holding a legal or beneficial interest in property.

64.     For purposes of this claim, the RICO "enterprise" is an association-in-fact, as defined in 18 U.S.C. § 1961(4), consisting of Defendant Bob's Sponges, Defendant Harrison, the low-level "enforcers" Defendants' use to apply the barnacles, including but not limited to Taylor

13

CLASS ACTION COMPLAINT

Harrison, and the third parties who engage Bob's Sponges to victimize and extort those who park in their parking lots (the "Barnacle Enterprise").

65.     The Barnacle Enterprise is involved in interstate commerce as it is reliant on "barnacles" produced and distributed to the Barnacle Enterprise in interstate commerce and as it uses the Internet in the carrying on of its activities.

66.     The Defendants making up the Barnacle Enterprise had the common purpose of using extortion and extra-legal means of intimidation and coercion to enact vigilante retribution on those they subjectively perceived as parking on private property without permission.

67.     The Defendants making up the Barnacle Enterprise had the common purpose of enriching themselves by illegally infringing and trespassing on the property rights of Class members and by framing their barnacle-removal "service" as a legitimate business transaction and not part of an illegal, deceptive and likely-to-mislead-consumers scheme.

68.     Defendants, and each of them, knowingly, or with reckless disregard, participated and directed in the pattern of racketeering alleged herein.

69.     Defendant Harrison, on information and belief, participated in the Barnacle Enterprise by, among other things: liaising with law enforcement officers attempting to curtail the Barnacle Enterprise's pattern of racketeering activity; recruiting and supervising the Barnacle Enterprise's low-level enforcers; and communicating with the third parties who engage Bob's Sponges to victimize and extort those who park in their parking lots.

70.     Defendant Bob's Sponges, on information and belief, participated in the Barnacle Enterprise by, among other things: purchasing and/or renting the "barnacles" used by the Barnacle Enterprise to extort victims, hiring the low-level enforcers who carry out the extortion,

and contracting with the third parties who engage Bob's Sponges to victimize and extort those who park in their parking lots.

71.    Defendants knew that there was no legal basis for their application of barnacles to victims' vehicles. This knowledge is demonstrated by their efforts to convince Philadelphia lawmakers to adopt regulations that would authorize and legitimate their scheme; such advocacy reveals Defendants' knowledge that, under existing law, their conduct was not authorized or legitimate.

72.    Defendants' mental state vis-à-vis the racketeering alleged herein is also shown by Defendants' intention to obtain money or property through the use of materially misleading conduct and statements. Defendant Harrison has boasted in an online video about the higher profit margins she achieves using barnacles versus providing legitimate, authorized, tow truck services. These comments reflect Defendants' intention to engage in the pattern of racketeering alleged herein because such racketeering is more profitable than legitimate, lawful, regulated, towing services.

73.    Defendants conducted the affairs of the Barnacle Enterprise through a pattern of racketeering activity involving wire fraud (18 U.S.C. § 1343) and theft by extortion in violation of 18 Pa.C.S. § 3923 as well as violations of 18 U.S. Code § 1951.

### *Predicate Act of Wire Fraud*

74.    Defendants' pattern of racketeering includes predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

75.    On October 25, 2025, at 3:27 p.m. EDT, an agent of Defendant named "Taylor," on information and belief Defendant Harrison's son Taylor Harrison, sent an email over the

Internet to Plaintiff from the email address bigfkdoblock@gmail.com. This email said "$100 receipt." This use of the interstate wires was in furtherance of Defendants' scheme to defraud Plaintiff and other similarly-situated victims by making their illegal, extortionary conduct appear more legitimate. By providing Plaintiff a "receipt" for conduct that was actually theft-by-extortion and violative of Pennsylvania common law, Defendant Bob's Sponges advanced its scheme by making its conduct appear more legitimate, akin to a normal business transaction for which one would receive a receipt.

76.    The receipt email served to make the transaction appear legitimate and discourage victims from seeking recourse, thereby advancing the concealment phase of the ongoing scheme; the receipt also facilitated the enterprise's ability to repeat the scheme by creating a paper trail that falsely suggested the extortion was a lawful business transaction.

77.    This October 25, 2025 email was sent over the Internet and, as such, traveled in interstate commerce on interstate wires, regardless of whether both sender and recipient were in Pennsylvania. *See United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) ("[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce.").

### *Predicate Acts of Theft by Extortion in Violation of 18 Pa.C.S. § 3923*

78.    18 U.S. Code § 1961 defines racketeering activity as including "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." 18 U.S. Code § 1961(1)(A).

79.    On information and belief, on November 29, 2025, Defendant Bob's Sponges,

16

CLASS ACTION COMPLAINT

through its agent Taylor Harrison, committed theft by extortion by placing a barnacle device on a vehicle parked on private property within the City of Philadelphia that, under the Philadelphia Code, could not be "handled" in any way by a towing company because it had not been ticketed, and then demanding money from its victim by threatening to persist in engaging in criminal mischief, in violation of 18 Pa. C.S. § 3304, if the victim did not pay the demanded monies.

80.     On information and belief, the money Defendant attempted to extort from its victim exceeded $50.00.

81.     Because it involved more than $50.00, Defendant's commission of theft by extortion on or around November 29, 2025, is a crime punishable under Pennsylvania law by imprisonment for more than one year and, by extension, an act of racketeering under 18 U.S. Code § 1961(1)(A).

82.     On March 7, 2024, one social media user posted on Facebook "Bruh the barnacle in Philadelphia done got me 😭😭😭😭😭😭 boul in the back changing another windshield said "I can take ya windshield off for you" 😭😭 man it cost $500 to remove this thing never againnnn!! Philadelphia City Hall if yall gonna do this make sure there's signs posted saying I can't park there…." The post was accompanied by a photo of a car whose windshield was covered by a yellow barnacle inscribed "Bob's Sponges."

83.     On information and belief, on or around March 7, 2024, Defendant Bob's Sponges, committed theft by extortion by placing a barnacle device on a vehicle parked on private property within the City of Philadelphia that, under the Philadelphia Code, could not be "handled" in any way by a towing company because it had not been ticketed, and then demanding money from its victim by threatening to persist in engaging in criminal mischief, in

violation of 18 Pa. C.S. § 3304, if the victim did not pay the demanded monies. The vehicle was a red sedan and, on information and belief, the barnacle was placed on it during daylight hours.

84.    On information and belief, the money Defendant attempted to extort from its victim on or around March 7, 2024, exceeded $50.00.

85.    Because it involved more than $50.00, Defendant's commission of theft by extortion on or around March 7, 2024, is a crime punishable under Pennsylvania law by imprisonment for more than one year and, by extension, an act of racketeering under 18 U.S. Code § 1961(1)(A).

86.    On or around November 2025, a social media user made a post titled "Girlfriend got Illegal Barncle [sic] on her Window and had to Pay $150" on the page "r/philly," a community page for discussions related to Philadelphia.[1] The post included a video featuring two employees of Bob's Sponges, one of them, on information and belief, Defendant Harrison's son Taylor Harrison. In the video, there is a police officer speaking to the Bob's Sponges' agents. The narrator of the video shows a barnacle on a grey/silver vehicle and states "we have a police officer right here telling these folks that it's illegal to do that in the City of Philadelphia. They're asking for more paperwork, trying to argue that. They're out here ripping off the City of Philadelphia. We got the police on our side. And these people are still trying to rip us off." The video was taken in a parking lot at the intersection of 4th Street and Spring Garden, in the Northern Liberties neighborhood.

87.    On    information    and    belief,    the    video    footage    depicted    at

---

[1]    *See* "Girlfriend got Illegal Barncle [sick] on her Window and had to Pay $150," "phillyscams," *available at* https://www.reddit.com/r/philly/comments/1p7pyuz/girlfriend_got_illegal_barncle_on_her_window_and/ (last accessed March 26, 2026).

CLASS ACTION COMPLAINT

https://www.reddit.com/r/philly/comments/1p7pyuz/girlfriend_got_illegal_barncle_on_her_window_and/ is true and authentic.

88.    On information and belief, on or around November 2025, Defendant Bob's Sponges, committed theft by extortion by placing a barnacle device on a grey/silver vehicle parked in a private lot at the intersection of 4th Street and Spring Garden within the City of Philadelphia. Under the Philadelphia Code, the grey/silver vehicle onto which the barnacle was placed could not be "handled" in anyway by a towing company because it had not been ticketed. Defendant Bob's Sponges and then demanded $150.00 from its victim by threatening to persist in engaging in criminal mischief, in violation of 18 Pa. C.S. § 3304, if the victim did not pay the demanded monies.

89.    On information and belief, the money Defendant attempted to extort from its victim on or around November 2025, exceeded $50.00.

90.    Because it involved more than $50.00, Defendant's commission of theft by extortion on or around November 2025, is a crime punishable under Pennsylvania law by imprisonment for more than one year and, by extension, an act of racketeering under 18 U.S. Code § 1961(1)(A).

***Predicate Acts of Interference with Commerce by Threats or Violence***

91.    All of the facts previously alleged are incorporated herein as if fully alleged herein.

92.    Each of the predicate acts of theft by extortion in violation of 18 Pa.C.S. § 3923 is also a predicate act of interference with commerce by threats or violence in violation of 18 U.S. Code § 1951.

93.     On or around (1) November 29, 2025, (2) March 7, 2024, and (3) November 2025, Defendant Bob's Sponges obstructed, delayed, or affected commerce by using barnacles to incapacitate vehicles parked in private parking lots in commercial areas within the City of Philadelphia.

94.     This obstruction, delay, or effect on commerce was done through extortion, or an attempt or conspiracy to commit extortion. In particular, Defendant Bob's Sponges obtained property by extortion from (a) Plaintiff as well as, on information and belief, (b) the social media poster who posted on Facebook on March 7, 2024, and (c) the girlfriend of the social media poster who posted on Reddit in November 2025.

95.     On each of these three occurrences, Defendant Bob's Sponges "obtain[ed] . . . property from another, with his consent, induced by wrongful use of . . . fear." In particular, Defendant Bob's Sponges wrongfully used victims' fears that they would be stranded and deprived the use of their own vehicles in order to extract "ransom" payments of upwards of $100.00 from them. *Cf. United States v. Addonizio*, 451 F.2d 49, 72 (3d Cir. 1971) (describing definition of "extortion" under the Hobbs Act and stating "[t]he 'fear' may be fear of economic loss as well as of physical harm").

### *The Barnacle Enterprise's Pattern of Racketeering Activity*

96.     All of the predicate acts alleged herein are **related** insofar as they all involve Defendant's conduct of a specific fraudulent and illegal scheme (using barnacles to convert victims' vehicles and then extort them for cash).

97.     The pattern of racketeering activity alleged herein is **continuous**. On January 15, 2025, Defendant Harrison sent an email to Philadelphia government officials in which she wrote

"I have been doing barnacles inside of Philadelphia for the last two years." This statement reflects that Defendant's scheme has lasted at least two years and therefore displays closed-ended continuity. The scheme's closed ended continuity is further demonstrated by the more than 20 months between the March 7, 2024, predicate act of theft by extortion and violation of the Hobbs Act and the November 29, 2025 predicate act of theft by extortion and violation of the Hobbs Act.

98.    Defendant's pattern of racketeering activity also has open-ended continuity because Defendants are extremely committed to enriching themselves through the scheme and, as such, there is a significant risk they will continue victimizing Philadelphians unless enjoined by this Court. Defendants' commitment to their illegal racketeering scheme is evidenced by the fact that they persisted in extorting members of the public through the use of barnacles even after being told repeatedly by law enforcement that their conduct was illegal. This brazen disregard for law enforcement reflects that Defendants' racketeering activity poses an ongoing, open-ended threat to Class members and other members of the public.

99.    Plaintiff and the Class suffered money damages and injury to their property rights that were proximately caused by Defendant's racketeering activity, in particular, its extortion. These injuries were a foreseeable and direct result of Defendants' racketeering activity.

100.    Plaintiff and the members of the Class are entitled to actual damages, treble damages, and attorney fees and costs, pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION

### Conspiring in a RICO Enterprise, 18 U.S.C. § 1962(d)

*Against all Defendants*

101.    Plaintiff incorporates and realleges the preceding paragraphs as though fully set forth herein.

102.    Both Defendants are central participants in the barnacle scheme and took active steps to knowingly facilitate the Barnacle Enterprise's pattern of racketeering activity. In short, Defendants had, with each other and other participants in the Barnacle Enterprise, an agreement to participate in an endeavor which, if completed, would constitute a violation of 18 U.S.C. § 1962(c).

103.    Defendant Harrison knowingly agreed to facilitate the Barnacle Enterprise's pattern of racketeering activity by, among other activities, hiring and supervising the low-level "enforcers" who carried out the extortion, on information and belief, liaising with the company providing the barnacles, ITSA Solutions LLC, and by speaking with complaining victims on the phone. Each of these activities was taken in furtherance of the Barnacle Enterprise's racketeering and reflects Defendant Harrison's agreement that Defendant Bob's Sponges should violate 18 U.S.C. § 1962(c).

104.    Defendant Bob's Sponges knowingly agreed to facilitate the Barnacle Enterprise's pattern of racketeering activity by contracting with third-parties on whose property it committed theft by extortion, receiving the "ransom" monies of Class members desperate to regain control of their vehicles, and committing the predicate acts alleged herein.

105.    The conduct of all Defendants in furthering the aims of the RICO Barnacle

CLASS ACTION COMPLAINT

Enterprise, as described above, was knowing and intentional.

106.    By agreeing to further the above-described deceptive and extortionary scheme, with knowledge of its deceptiveness and extortionary nature, Defendants conspired to violate 18 U.S.C. § 1962(c), and therefore violated 18 U.S.C. § 1962(d).

107.    Plaintiff and the members of the Class suffered monetary losses and injury to their property rights by reason of this violation, including all monies paid to Defendant Bob's Sponges as part of the extortionary barnacle racket.

108.    As a result, Plaintiff and the members of the Class are entitled to actual damages, treble damages, and attorney fees and costs, pursuant to 18 U.S.C. § 1964(c).

## THIRD CAUSE OF ACTION

### Violation of the Unfair Trade Practices and Consumer Protection Law

*Against all Defendants*

109.    On or around October 25, 2025, Plaintiff—begrudgingly and only because she had no other options—"purchased" barnacle removal services from Defendant Bob's Sponges for $100.00. Plaintiff "purchased" this "service" primarily for the personal, family, or household purpose of regaining access to her personal vehicle.

110.    In offering their barnacle removal service to Plaintiff, Defendants, and each of them, used or employed the following methods, acts, and practices declared unlawful by Pennsylvania's consumer protection law:

    a.    Defendants caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of their barnacle removal services by masquerading as a legitimate parking enforcement entity approved

CLASS ACTION COMPLAINT

to operate within the City of Philadelphia when, in fact, Defendants were operating an illegal racket and not a legitimate business, *see* 73 P.S. § 201-2(4)(ii);

b. Defendants represented that their barnacle removal services had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they did not have insofar as they represented the barnacle removal to victims as a legitimate and necessary business transaction when, in fact, it was nothing more than extortion, *see* 73 P.S. § 201-2(4)(v);

c. Defendants knowingly misrepresented that their barnacle removal services were needed when, in fact, they were not needed and the appearance of "necessity" was created by Defendants' own illegal conduct in placing barnacles on victims' windshields, *see* 73 P.S. § 201-2(4)(xv);

d. Defendants engaged in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding by disabling Plaintiff's vehicle with a barnacle and then demanding cash for the removal of the barnacle that was illegally placed on Plaintiff's vehicle, *see* 73 P.S. § 201-2(4)(xxi).

111. Plaintiff lost $100.00 as a result of Defendants' use or employment of the unlawful methods and practices enumerated above.

112. Plaintiff justifiably relied on Defendants' unfair and deceptive business practices in making the decision to purchase Defendants' barnacle-removal services. In particular, her reliance was reasonable because she needed immediate access to her vehicle and paying

CLASS ACTION COMPLAINT

Defendants for their barnacle-removal services was her only option for regaining control of her vehicle.

113.    Plaintiff is entitled to treble damages, injunctive relief, attorney fees, and costs under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *See* 73 P.S. § 201-9.2.

## FOURTH CAUSE OF ACTION

### Conversion

*Against all Defendants*

114.    At all times on October 25, 2025, Plaintiff had actual or constructive possession of her vehicle or an immediate right to possession of her vehicle.

115.    On October 25, 2025, Defendant Bob's Sponges—without Plaintiff's authorization or consent—exercised dominion or control over Plaintiff's vehicle by affixing its windshield with a "barnacle."

116.    The barnacle Defendant affixed to the windshield of Plaintiff's vehicle substantially interfered with Plaintiff's possession of the vehicle by making it impossible to safely drive the vehicle unless the barnacle was removed.

117.    At the time Defendant Bob's Sponges placed the barnacle on the windshield of Plaintiff's vehicle, it intended to exercise dominion or control over her vehicle and to prevent her from using her own vehicle unless she made a cash payment to Defendant Bob's Sponges.

118.    Defendant Bob's Sponges deprived Plaintiff of the use of her vehicle without lawful justification.

119.    Plaintiff suffered damages as a result of Defendant Bob's Sponges' interference with her possession of her vehicle insofar as she lost control and dominion of her vehicle and was temporarily unable to drive and insofar as she was forced to pay Defendants $100.00 to regain access to her vehicle.

## FIFTH CAUSE OF ACTION

### Trespass to Chattels

*Against all Defendants*

120.    Defendant Bob's Sponges deprived Plaintiff of her use of her vehicle by applying a "barnacle" to the windshield of the vehicle.

121.    Plaintiff did not consent to Defendant's application of the barnacle to her windshield.

122.    Defendant's application of the barnacle to the windshield of Plaintiff's vehicle interfered with Plaintiff's possessory interest in her vehicle by making it impossible for Plaintiff to safely operate her vehicle.

123.    Defendant's actions were done knowingly, with the specific intent to deprive Plaintiff of the use of her vehicle.

### JURY DEMAND

124.    Plaintiff demands a trial by jury on all issues so triable.

## LOCAL RULE 53.2 CERTIFICATION

125.　Pursuant to Local Rule 53.2(3)(C)(1), Plaintiff's counsel hereby certifies that the damages sought herein exceed $150,000.00, exclusive of interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Theresa Willer-Grinkewicz prays for the following relief:

1.　An order certifying the class and the subclasses and appointing Theresa Willer-Grinkewicz as class representative of the Class and each subclass and Lorraine Weekes as class counsel;

2.　Compensatory damages;

3.　Exemplary damages;

4.　Consequential damages;

5.　Treble damages;

6.　Punitive damages;

7.　Nominal damages;

8.　Pre- and post-judgment interest at the maximum rate permitted by law;

9.　Injunctive relief in the form of an order enjoining Defendants from applying a "barnacle" to any vehicle within the City of Philadelphia that has not first been ticketed by the Philadelphia Parking Authority or other legitimate law enforcement;

10.　Attorney fees as provided for by law, statute, equity, or contract, including a contingency fee multiplier to account for the contingent nature of the representation in this case;

11.　The costs of this action; and

27

CLASS ACTION COMPLAINT

12.     Other such further relief as the Court may deem just and proper.


DATED: APRIL 15, 2026

                                                        KNEUPPER & COVEY PC

                                        _____

                                        BY: A. Lorraine Weekes, Esq., Attorney ID No. 326942
                                                        *Attorney for Plaintiff*
                                                        17011 Beach Blvd Ste 900
                                                        Huntington Beach, CA 92647
                                                        Ph. 215-999-9767

CLASS ACTION COMPLAINT